### EMANUEL v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 8, 1912.)

No. 184.

1. CRIMINAL LAW (§ 619*)—CONSOLIDATION OF INDICTMENTS.

    Rev. St. § 1024 (U. S. Comp. St. 1901, p. 720), authorizes the consolidation for trial of indictments for using the mails to defraud under section 5480 (U. S. Comp. St. 1901, p. 3696), notwithstanding the fact that such indictments charge offenses not committed within the same six months, and which could not be joined in one indictment under the latter section, and in the aggregate charge more than three offenses which may be so joined.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1376; Dec. Dig. § 619.*

    Consolidation of and trial of indictments together, see note to Dolan v. United States, 69 C. C. A. 287.]

2. CRIMINAL LAW (§ 619*)—CONSOLIDATION OF INDICTMENTS—"PERSON."

    Rev. St. § 1024 (U. S. Comp. St. 1901, p. 720), provides that when there are several charges against any person for the same act or transaction, or for two or more connected acts or transactions, or for two or more acts

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or transactions in the same class of crimes or offenses, which may be properly joined, instead of having several indictments, the whole may be joined in one indictment in several counts; and, if two or more indictments are found, in such case the court may order them to be consolidated. *Held*, that under section 1, providing that words importing the singular number may apply to several persons or things, section 1024 was not limited to indictments against a single person, but embraced consolidated indictments against several defendants.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1376; Dec. Dig. § 619.*

For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

3. CRIMINAL LAW (§ 619*)—CONSOLIDATION OF INDICTMENTS.
Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), prohibiting the use of the mails in furtherance of a scheme to defraud, provides that the indictment, information, or complaint may severally charge offenses to the number of three when committed within the same six calendar months, but the court thereupon shall give a single sentence, and shall apportion the punishment, etc. *Held*, that where six indictments were found against five defendants, the first five indictments charging a fraudulent use of the mails under section 5480, while the sixth charged conspiracy under section 5440 (page 3676) to commit the offense set forth in the other indictments and similar offenses as a ·part of the same scheme, the fact that the indictment for conspiracy charged that defendants did conspire together and with divers persons to the jury unknown, such "divers persons unknown" not being indicted or made parties, did not prevent consolidation of the conspiracy indictment with the others.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1376; Dec. Dig. § 619.*]

4. JURY (§ 136*)—PEREMPTORY CHALLENGES—SEVERAL DEFENDANTS JOINED.
Under Rev. St. § 819 (U. S. Comp. St. 1901, p. 629), providing that, in all cases where there are several defendants or several plaintiffs, the parties on each side shall be deemed a single party for the purpose of challenging jurors, where indictments against several defendants were consolidated for trial, ·the defendants were only entitled to three peremptory challenges jointly.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 607–618; Dec. Dig. § 136.*]

5. POST OFFICE (§ 48*)—USE OF MAILS—INTENT TO DEFRAUD—INDICTMENT.
Indictments for using the post office in furtherance of a scheme to defraud, in violation of Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), are not to be tested by the rules applicable to indictments for obtaining money under false pretenses.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.*]

6. POST OFFICE (§ 48*)—FRAUDULENT USE OF MAILS—CONSPIRACY—INDICTMENT.
Where an indictment for conspiracy to defraud, which was carried into effect by using the post office establishment, charged that it was intended by the conspirators in and for the execution of their scheme to place and ·cause to be placed letters and circulars in a post office of the United States, the indictment was not objectionable for failure to charge that it was a part of the conspiracy to place or cause to be placed letters and circulars in the United States post office.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.*

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

7. CRIMINAL LAW (§ 442*)—EVIDENCE—COPIES OF LETTERS—PRIMA FACIE EVIDENCE.

Where, in prosecution for using the post office establishment in furtherance of a scheme to defraud, a witness testified that, after signing certain letters addressed to defendant's firm, he turned them over to the stenographer to copy, address, stamp, and mail, and that the routine of business in his office required her to attend to such details, and it further appeared that defendant replied in due course to one of the letters, and that the other did not require a reply, there was sufficient prima facie evidence to authorize the admission of copies of the letters in evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1027; Dec. Dig. § 442.*]

8. CRIMINAL LAW (§ 396*)—EVIDENCE—EVIDENCE ADMISSIBLE BY REASON OF THE ADMISSION OF OTHER EVIDENCE.

Where defendants cross-examined H., to whom a report had been made concerning the transactions in question and who had been called as a witness by the prosecution, and counsel for the government thereupon stated that he wished to preserve his rights with reference thereto, to which the court assented, it was not improper for the court to admit the report containing statements concerning the mine which was the subject of the scheme and as to one of the defendants.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 861–862; Dec. Dig. § 396.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

George W. Emanuel was convicted of conspiracy to defraud by use of the post office establishment, and he brings error. Affirmed.

This cause comes here upon appeal from a judgment of the Circuit Court, Southern District of New York, which found plaintiff in error guilty as charged in two indictments out of a number upon which he was tried. Plaintiff in error was one of three defendants below. One of these, Thomas, was acquitted and the other, Larabee, was convicted upon three indictments. All these indictments were also against others as to whom the trial was severed, because one (Samuels) was never apprehended and another (Prince), though apprehended, escaped.

There were in all six indictments, and all of the five defendants above were included in each indictment. The first five indictments were for fraudulent use of the mails under section 5480, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 3696). while the sixth was for a conspiracy, under section 5440 (U. S. Comp. St. 1901, p. 3676), to commit the substantive offenses set forth in the other five, and similar offenses as part of the same scheme.

House, Grossman & Vorhaus (Robert C. Beatty, of counsel), for plaintiff in error.

Henry A. Wise, U. S. Atty. (Wolcott H. Pitkin, Asst. U. S. Atty., of counsel), for the United States.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. [1] The conspiracy indictment contained a single count. One of the other five was disposed of without submission to the jury. The other four contained ten counts of which two were nolled. Section 5480 contains the words "the indictment, information, or complaint may severally charge offenses to the number of three when committed within the same six calendar months." The conspiracy indictments were consolidated, and, when consolidated, the offenses charged were more than three in number, and the time of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

their commission was longer than six calendar months. ' The court ordered the six indictments consolidated under the very broad authority conferred by section 1024 (U. S. Comp. St. 1901, p. 720). It is contended that this was error· because of the provision of section 5480 above quoted. This is no new question, and the decisions in different districts are not uniform. But this court in Booth v. U. S., 154 Fed. 836, 83 C. C. A. 552, expressly decided the precise question holding that in cases like this ᵢthe court had the power under section 1024 to consolidate; and we are of the opinion that the new authorities which defendant here presents do not call for the overruling of that decision. The clause in section" 5480 which is relied on by defendant is omitted from Criminal Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]), so that. the question now presented will not arise in the future. The question is one of practice rather than of substantial right and we are satisfied that our former decision should be followed here.

[2] Two points not raised in the Booth Case are here presented. The clause in section 1024 reads: "When there are several charges against any person for the same act or transaction," etc. It is. contended that this applies to charges against a single defendant not against· several defendants; and, in support of the argument, it is pointed out that this provision first appeared in Act Feb. 26, 1853, c. 80, 10 Stat. p. 162, reading as follows: "Whenever there are or shall be several charges against any person or persons for the same act or transaction," etc. When this clause was carried into the revision which was adopted as the. Revised Statutes, the words "or persons" was omitted. The very first section of the Revised Statutes, however, provides that, in determining the meaning of said statutes, "words importing the singular number may extend and be applied to several persons or things." There was, therefore, no necessity for retaining the omitted words. The section would be extended to cover several persons as well as a single one, unless there were some good reason why ·it should not be thus extended. No such reason appears or is suggested.

[3] It is further contended that the conspiracy indictment could not be consolidated with the indictments under section 5480 because the latter were found against five named defendants, whereas the conspiracy indictment charges that these five defendants did conspire together and with divers other persons to the jury unknown. The defendants, however, were the same in all six indictments. The "divers persons unknown" were not indicted or made parties.

[4] It is next contended that the court erred in allowing only three .challenges on all·· the indictments; it being insisted that defendants should have had three on each original indictment, eighteen in all. This proposition is really disposed of by our ruling on the question of consolidation. The case mainly relied on by defendant is Betts v. U. S., 132 Fed. 228, 65 C. C. A. 452, but in that case there was no ·consolidation. Nine indictments were tried at the same time. In the case at bar, however, the several indictments were consolidated' into a single cause with one ᵢplaintiff and five defendants. Section 819, U. S.

Rev. Stat. (U. S. Comp. St. 1901, p. 629), provides that in all cases where there are several defendants or several plaintiffs the parties on each side shall be deemed a single party for the purposes of challenging under this section." Defendants were entitled to three challenges only.

The next point raised is that "defendant's legal right to peremptorily challenge a juror at any time before the jury was sworn was curtailed." What happened was this: Twelve men were drawn from the panel and took seats in the box. Defendant then examined them on their voir dire. Apparently none of them were found to be disqualified. Thereupon counsel asked leave "to reserve their peremptory challenge of the jury as it stands until after the government has examined the jury." This was denied, except so far as the panel may be changed by the challenges of the prosecution, and the court "directed the counsel to exercise any challenges it may have in this panel at the present time," whereupon defendant used its three peremptory challenges. Thereafter the government examined the panel and exercised one peremptory challenge.

The order in which peremptory challenges shall be exercised is a matter of practice which varies in different districts. In the Southern District of New York, as appears from this record, the defendant begins; in the Northern District and in the District of Vermont the practice is the other way. In Radford v. U. S., 129 Fed. 49, 63 C. C. A. 491, in the hope that some uniformity might be established in the circuit, we indicated a method of challenging which was apparently simple and absolutely impartial. But such indication was, of course, not constraining. It is settled by controlling authority that the order in which peremptory challenges shall be exercised is a matter within the discretion of the trial judge. Pointer v. U. S., 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208.

But the point here raised is not addressed to the order in which these challenges shall be exercised. The real question is whether defendant was required to exercise his peremptory challenges prematurely. The argument is that neither side should be required to exercise these challenges until the box is filled with 12 men qualified to sit. It could not be known until after the prosecution had finished its examination on the voir dire whether all of the twelve men then in the box were qualified. There seems much force in the argument that peremptory challenges should be reserved until the box contains only men who, if not challenged peremptorily, will sit to try the cause; and it may be noted that in the Pointer Case the Supreme Court was careful to state that the jurymen tendered to both sides for peremptory challenge were "found to be qualified under the law and not subject to challenge for cause."

It is not necessary to decide the question raised here, because it is but an academic one. The government's examination on the voir dire did not discover that any one of the twelve men was not qualified under the law, or was subject to challenge for cause. Therefore, had the government been required to examine before defendant was required to challenge, the latter would have found the same men in the box who were there when he did challenge.

196 F.—21

[5] The indictments under section 5480 are criticised apparently upon the mistaken theory that they are to be tested for sufficiency by the rules which are applied to indictments for obtaining money under false pretenses.

[6] The conspiracy indictment is further criticised because it "fails to allege that it was a part of the conspiracy to place, or cause to be placed, letters and circulars in a post office of the United States." Since the indictment charges that it was intended by the conspirators, in and for the execution of their scheme, "to place, and cause to be placed, letters and circulars in a post office of the United States," it is not surprising that the oral argument did not discuss this assignment of error. The indictments charged all that was necessary to charge under this section 5480 (Durland v. U. S., 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709), and informed defendant fully what it was he had to meet.

[7] Error was assigned to the admission of copies of two letters (Exhibits 515 and 516) by Huston to defendant's firm. These letters followed two others from Huston to Brown (513 and 514), which Brown testified he showed to the defendant, and which defendant admitted he saw. The object of all this proof was to show that defendant had been informed of the contents of the letters. As to both 515 and 516, Huston testified that, after signing, he turned them over to his stenographer to copy, address, stamp, and mail, and that the routine of business in his office required her to attend to these details. It further appeared that defendant replied, in due course, to 515. Five hundred and sixteen did not require a reply. We think there was sufficient prima facie evidence to warrant the admission of the letters. Even if there was error in admitting 516, it was harmless, because it added nothing material to the statements contained in 513, 514, and 515, which defendant, either by admission on the witness stand or by his letters to Huston, admitted that he had seen.

[8] Error is assigned to the admission of a letter or report from one Fry to a man named Campbell containing statements about the mine and about Samuels, one of the five defendants. Ordinarily such a communication between third parties not shown at the time to defendant would have been excluded. But when Huston, to whom Campbell had given the report and who was called as a witness by the prosecution, was being cross-examined the defendant's counsel for some reason, which we are at a loss to comprehend, asked him in great detail as to the contents of this report, although cautioned by counsel for the government that "he wished to preserve his rights of going into this thing," to which the court assented. Defendant's counsel thus opened the door to the admission of the report itself. Possibly there were some things in it which he might nevertheless properly object to, and from a remark of the court it may be inferred that, if counsel had indicated what they were, his objections might have been sustained. But he contented himself with a general objection to the whole report as "incompetent."

The remaining assignments of error are technical and unimportant. It is unnecessary to discuss them. We are fully satisfied from an

examination of the record that there was a fraudulent scheme to defraud and that the jury were warranted in finding that as early as August, 1908, Emanuel knew of the fraudulent scheme, and continued to aid in carrying it out. The scheme was such a gross and open fraud that it is impossible that this man could have carried on the business without knowing the nature of it and the different circumstances pointed out in the brief for the government taken together are quite sufficient to put him on his guard. Indeed, we think the letters and circulars sent out over Emanuel's name bore the evidence of fraud upon their face. The defendant apparently does not contend that the evidence is insufficient to warrant the conviction, and in our opinion he is quite right in not so claiming.

The judgment is affirmed.